IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TAYLOR M. NOCERA         : Civil No. 1:25-CV-1170
                    :
  Plaintiff,             :
                    :
      v.             :
                    : (Chief Magistrate Judge Bloom)
FRANK BISIGNANO,         :
Commissioner of Social Security,   :
                    :
  Defendant.           :

## MEMORANDUM OPINION

I.   Introduction

Taylor M. Nocera filed an application under Title XVI of the Social Security Act for supplemental security income on June 23, 2022.[1] Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Nocera was not disabled from her alleged onset date of January 1, 2005, through September 26, 2024, the date of the ALJ's decision.[2]

Nocera now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record,

---

[1] Tr. 17.
[2] *Id.*

and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'"[3] we conclude that substantial evidence supports the ALJ's findings in this case.  Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.   Statement of Facts and of the Case

Nocera filed for supplemental security income, alleging disability due to attention deficit hyperactivity disorder ("ADHD"), obsessive compulsive disorder ("OCD"), anxiety, and depression.[4]  Nocera was 34 years old at the time of her alleged onset of disability, had a limited education, and had no past relevant work.[56]

---

[3] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

[4] Tr. 62.

[5] Tr. 27.

[6] Nocera did not outline the pertinent medical/vocational evidence of record in her brief as required by local rules.  (*See* M.D. Pa. L.R. 83.40.4(a)).  We will therefore forego recitation of that record here, except to say that the record contains medical record evidence and medical opinion evidence, which the ALJ found supported the existence of three severe impairments and two other medically determinable but non-severe impairments.

On July 31, 2024, the ALJ held a hearing on Nocera's disability application.[7]  Nocera and a Vocational Expert ("VE") both appeared and testified at this hearing.[8]  Nocera described her activities at home, her aversion to leaving the home, her medications, and her symptoms.[9]  The VE answered hypothetical questions about what work would be possible for a person with limitations like those Nocera alleged.[10]  Following this hearing, on September 26, 2024, the ALJ issued a decision denying Nocera's application for disability benefits.[11]  The ALJ first concluded that Nocera had not engaged in substantial gainful activity since her alleged onset date of June 23, 2022.[12]  At Step 2 of the sequential analysis that governs disability claims, the ALJ found that the plaintiff suffered from severe impairments of major depressive disorder, generalized anxiety disorder, and OCD.[13]  At Step 3, the ALJ concluded that none of

---

[7] Tr. 35-51.
[8] *Id.*
[9] Tr. 37-46
[10] Tr. 47-50.
[11] Tr. 17-28.
[12] Tr. 19.
[13] *Id.*

these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations.[14]

Between Steps 3 and 4, the ALJ then concluded that Nocera:

[H]a[d] the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to unskilled work activity, as defined in the Dictionary of Occupational Titles (DOT), which is limited to simple, routine, repetitive tasks; that is low stress, defined as only occasional decision making required and only occasional changes in the work setting; and no interaction with the public, but could have occasional interaction with coworkers and supervisors.[15]

In reaching this residual functional capacity ("RFC") determination, the ALJ considered the objective medical record, the medical opinion evidence, and Nocera's reported symptoms.

With respect to the medical opinion evidence, the ALJ considered the opinions of state agency psychological consultants, Dr. Schnepp and Dr. Yeater.[16]  Both opinions concluded that Nocera had:

[M]oderate limitation in the "paragraph b" criteria, except mild limitation in understanding, remembering, or applying information and that although she might have difficulty understanding, retaining, and following complex, detailed

---

[14] Tr. 21.
[15] Tr. 23.
[16] Tr. 26.

instructions, she could understand, retain, and follow simple task instructions, i.e., perform one and two-step tasks and complete simple routine, repetitive tasks in a stable environment and that the claimant could carry out short and simple instructions; make simple decisions; maintain an ordinary routine without special supervision; maintain concentration and attention for reasonably extended periods of time and is capable of functioning within a schedule at a consistent pace when performing routine, unskilled tasks, although she is somewhat limited by her mental impairment; maintain regular attendance and be punctual within reasonable expectations when provided with a consistent schedule, despite some difficulties with stress tolerance; maintain socially appropriate behavior and perform the personal care functions needed to maintain an acceptable level of personal hygiene within reasonable expectations, despite some difficulty in public social interaction due to her mental impairments; get along with others reasonably well; ask simple questions and accept instruction/advice; maintain an ordinary routine and adapt to modest changes without special supervision; and take appropriate precautions to avoid hazards and exercise appropriate judgment; and that her impairments do not preclude her from being able to meet the basic mental demands of performing routine, unskilled tasks on a sustained basis.[17]

The ALJ found these opinions only somewhat persuasive.[18] She reasoned that the opinions were partially supported by the doctors' review of the records, and partially consistent with the evidence, but that the

---

[17] Tr. 26, 52-59, 60-67.
[18] Tr. 26.

5

limitation to one- and-two step tasks was not sufficiently explained or supported, and was belied by certain record evidence.[19]   The ALJ therefore omitted that limitation from the RFC.[20]

With respect to Nocera's symptoms, the ALJ found that Nocera's statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the medical evidence.[21]   Nocera testified that her OCD forced her to shower two or three times a day and caused her to avoid interacting with people in general, she had trouble staying asleep and could not treat that issue with medication because of interactions with other medications, her OCD caused a breakdown that prevented her from finishing high school, she had to frequently "count cabinets" and wash her hands because of her OCD, she was unable to interact with most people besides her parents, and sometimes could not get out of bed for days or even weeks at a time.[22]

---

[19] *Id.*
[20] Tr. 23, 26.
[21] Tr. 24.
[22] Tr. 40-46.

The ALJ ultimately found Nocera's testimony to be inconsistent with the objective clinical findings.[23]  The ALJ recounted the objective evidence during the alleged disability period supporting her testimony, including psychiatric treatment for five years, but found it was contrasted by, *inter alia*, conservative treatment, a lack of severe symptoms such as hallucinations or homicidal ideation, consistent records showing appropriate grooming, dress, and behavior at her counseling sessions, and consistently coherent and logical thought processing at those sessions.[24]  Ultimately, the ALJ concluded that Nocera was not as limited as she alleged.

Having made these findings, the ALJ found at Step 4 that Nocera had no relevant past work but found at Step 5 that she could perform the occupations of hospital food service worker, laundry worker, and hospital cleaner.[25]  Accordingly, the ALJ found that Nocera had not met the

---

[23] Tr. 24.
[24] Tr. 24-25.
[25] Tr. 26-27.

stringent standard prescribed for disability benefits and denied her claim.[26]

This appeal followed.  On appeal, Nocera argues that the ALJ erred in finding some of her impairments to be non-severe, did not properly assess medical opinion evidence, and failed to sufficiently credit the consistency of Nocera's reported symptoms.[27]  This case is fully briefed and is therefore ripe for resolution.  For the reasons set forth below, we will affirm the decision of the Commissioner.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[28]  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as

---

[26] Tr. 28.

[27] Doc. 11 at 5.

[28] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

8

adequate to support a conclusion."[29]    Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[30]

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."[31]  However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[32]  The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[33]

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to

---

[29] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[30] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[31] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

[32] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[33] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

support a conclusion.'"[34]   Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations."[35]   Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law.[36]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[37]   Thus, we cannot re-weigh the evidence. Instead, we must determine whether

---

[34] *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[35] *Id.*

[36] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[37] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

there is substantial evidence to support the ALJ's findings.  In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for her decision.[38]  This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[39]    Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[40]

## B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less

---

[38] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).
[39] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).
[40] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

11

than 12 months."[41] This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[42] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[43]

In making this determination, the ALJ follows a five-step evaluation.[44] The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[45]

---

[41] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).
[42] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).
[43] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).
[44] 20 C.F.R. §§404.1520(a), 416.920(a).
[45] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[46] In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[47] Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[48]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[49] If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform

---

[46] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).

[47] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

[48] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

[49] *Mason*, 994 F.2d at 1064.

13

consistent with the claimant's RFC, age, education, and work experience.[50]

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."[51]   Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base [her] RFC on a medical opinion from a physician is misguided."[52]

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision.   Cases that emphasize the importance of medical opinion support for an RFC assessment typically

---

[50] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

[51] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).

[52] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence.[53] These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence.[54] Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence.[55]

### C.    Legal Benchmarks for the ALJ's Assessment of Medical Opinions

For applications filed after March of 2017, the regulations require ALJs to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the

---

[53] *Biller*, 962 F. Supp. 2d at 778–79.
[54] *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.
[55] *Burns,* 312 F.3d 113.

15

claimant, specialization, and other factors tending to support or contradict a medical opinion.[56]  Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.[57]  Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[58]  The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[59]

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[60]  When confronted with several medical opinions, the ALJ can choose to credit certain opinions

---

[56] 20 C.F.R. § 404.1520c(c).

[57] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).

[58] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[59] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

[60] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

over others but "cannot reject evidence for no reason or for the wrong reason."[61]  Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[62]    On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base [her] RFC on a medical opinion from a physician is misguided."[63]

### D.    Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility determinations.[64]  Our review of those determinations is deferential.[65] However, it is incumbent upon the ALJ to "specifically identify and explain what evidence he found not credible and why he found it not

---

[61] *Mason*, 994 F.2d at 1066.

[62] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

[63] *Cummings*, 129 F. Supp. 3d at 214–15.

[64] *See Diaz v. Comm'r,* 577 F.3d 500, 506 (3d Cir. 2009).

[65] *Id.*

credible."[66]  An ALJ should give great weight to a claimant's testimony "only when it is supported by competent medical evidence."[67]  As the Third Circuit has noted, while "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them."[68]

The Social Security Rulings and Regulations provide a framework for evaluating the severity of a claimant's reported symptoms.[69]  Thus, the ALJ must follow a two-step process: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms considering the entire administrative record.[70]

Symptoms such as pain or fatigue will be considered to affect a claimant's ability to perform work activities only if medical signs or

---

[66] *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citations omitted).
[67] *McKean v. Colvin*, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted).
[68] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").
[69] 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p.
[70] SSR 16-3p.

18

laboratory findings establish the presence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms.[71]   During the second step of this assessment, the ALJ must determine whether the claimant's statements regarding the intensity, persistence, or limiting effects of his or her symptoms are substantiated considering the entire case record.[72]   This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work.[73]

The Social Security Administration recognizes that individuals may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings.[74]   Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations set forth seven factors that

---

[71] 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p.
[72] 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.
[73] *Id.*
[74] SSR 16-3p.

may be relevant to the assessment of the claimant's alleged symptoms.[75] These factors include: the claimant's daily activities; the "location, duration, frequency, and intensity" of the claimant's pain or symptoms; the type, dosage, and effectiveness of medications; treatment other than medications; and other factors regarding the claimant's functional limitations.[76]

### E.   The ALJ's Decision is Supported by Substantial Evidence.

Our review of the ALJ's decision denying an application for benefits is significantly deferential.  Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[77]   Judged against this deferential

---

[75] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[76] *Id.*

[77] *Biestek*, 139 S. Ct. at 1154.

20

standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

Nocera first argues that the ALJ erred in not finding her ADHD and post-traumatic stress disorder to be severe impairments at Step 2.[78] This argument fails.  At Step 2, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments.[79]  An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities," or if it is "something beyond 'a slight abnormality which would have no more than a minimal effect on an individual's ability to work.'"[80]  This Step 2 inquiry is a *de minimis* screening device used to cast out meritless claims.[81]  The claimant bears the burden to show that an impairment should be

---

[78] Doc. 11 at 6-8.

[79] *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

[80] 20 C.F.R. 404.1520(c); *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citations omitted).

[81] *McCrea*, 370 F.3d at 360; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).

considered severe.[82]  If some impairments were erroneously labeled non-severe, that error is harmless so long as the evaluation moves to Step 3.[83]

Nocera does not allege that the ALJ failed to consider these impairments after finding them non-severe, only that the failure to find them severe was itself error.[84]  Even assuming *arguendo* that it was error, such error is definitionally harmless so long as the impairments were considered through the later steps.  They were considered: the ALJ explained why the evidence showed these impairments were nonsevere and considered all evidence of mental impairments when formulating the RFC.[85]  Further, Nocera fails to explain how a finding that these impairments were severe would have changed the ALJ's decision.[86]  For both of those reasons, this argument is unpersuasive.

Next, Nocera argues that the ALJ erred in assessing certain medical opinions.  She argues that the ALJ failed to sufficiently explain

---

[82] *Bowen*, 482 U.S. at 146; *Stancavage v. Saul*, 469 F. Supp. 3d 311, 331 (M.D. Pa. 2020).

[83] *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007).

[84] Doc. 11 at 6-8.

[85] Tr. 21, 25.

[86] *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

her conclusion that the state agency physician opinions were only partially persuasive and failed to sufficiently consider the opinions of Dr. Yanusas and Counselor Costello.[87]  We disagree.

Firstly, we conclude that the ALJ properly considered the opinions of the state agency consultants.  The ALJ was obligated to comply with 20 C.F.R § 416.920c(c) when articulating her analysis of these opinions.[88] That statute lays out five main considerations, and explains that only the factors of supportability and consistency need to be explicitly discussed by the ALJ in her decision.[89]  Here, the ALJ discussed both of those essential factors.[90]  She also incorporated almost all the limitations from these medical opinions, omitting only the limitation that Nocera could only perform one- and two-step tasks.[91]  She clearly explained that decision, reasoning that there was medical evidence of functionality beyond that limitation, and that Nocera's treatment records and her

---

[87] Doc. 11 at 8-10.
[88] 20 C.F.R § 416.920c(c).
[89] *Id.*
[90] Tr. 26.
[91] *Id.*

23

activities of daily living both belied the limitation.[92]  We conclude there was no error in the ALJ's treatment of these opinions.

The other opinions were also properly considered by the ALJ.  In Social Security law, a medical opinion is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions."[93]  While Dr. Yanusas includes opinions in her records, those opinions are not specific about limitations or restrictions[94] and are not "medical opinions" that trigger any articulation obligations for the ALJ.  These statements are merely medical evidence, and the ALJ did not need to do anything besides consider them.[95]  Further, Nocera again fails to explain how the ALJ's decision would have changed had the ALJ credited these opinions as she desired.  Thus, there is no basis for a remand.

---

[92] *Id.*

[93] 20 C.F.R. § 416.913(a)(2).

[94] For example: Dr. Yanusas wrote that Nocera's ADHD symptoms are "sufficient to cause problems with vocational performance [.]"  This is not useful for the ALJ's task, as it is unclear what limitation could account for such a generalized finding.

[95] Tr. 25.

24

Similarly, the letter from Ms. Costello does not qualify as a medical opinion, as it contains no references to limitations or restrictions. The letter appears to conclude that "it does not appear that [Nocera] has the capacity or skills to obtain any gainful employment currently."[96] The ALJ was statutorily prohibited from discussing or crediting this conclusory statement.[97] Because Ms. Costello's letter is not a "medical opinion," there is no error in the ALJ failing to analyze it as such. The ALJ considered the letter as medical evidence.[98] No more was required.

Lastly, Nocera alleges the ALJ erred by failing to sufficiently credit her testimony. She argues it was error to not mention that her reports of her symptoms were consistent throughout the application process. Nocera cites no law in support of this argument. She also claims that the ALJ "mischaracterized" her reported symptoms "as evidence that supports that [Nocera] performs daily activities which would render her

---

[96] Tr. 647.

[97] 20 C.F.R. § 416.920b(c)(3)(i) (Discussing "[e]vidence that is inherently neither valuable nor persuasive [,]" and explaining that the ALJ "will not provide any analysis about how [she] considered . . . [s]tatements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work.")

[98] Tr. 24.

25

capable of performing a full range of work at all exertional levels."[99]  We agree that this was the ALJ's conclusion but discern no error.  Nocera does not explain why this is a "mischaracterization" except to say that she was consistent in reporting her symptoms, and that those symptoms "support" that she cannot perform a full range of work at any exertional level.  We cannot credit such a vague argument.[100]  Lastly, Nocera does not offer any argument as to how the outcome here might have been different if the ALJ had referenced or credited Nocera's consistency, which, as we have already explained, is essential for a successful appeal.  For all these reasons, this argument is unavailing.

Given that the ALJ considered all the evidence and adequately explained the decision for including or discounting certain limitations as established by the evidence, we find no error with the decision.  Therefore, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that

---

[99] Doc. 11 at 11.

[100] This argument also appears to ask us to re-weigh the evidence, which is not this court's role.

substantial evidence supported the ALJ's evaluation of this case, and this decision will be affirmed.

## IV.    Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 20th day of April 2026.


                                        *s/ Daryl F. Bloom*
                                        Daryl F. Bloom
                                        Chief United States Magistrate Judge

27